**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**THE HANOVER INSURANCE COMPANY**                    **PLAINTIFF**

**V.**                        **3:18CV00054 JM**

**DUNBAR MECHANICAL CONTRACTORS,**
**LLC, dba DUNBAR MECHANICAL**
**CONTRACTORS, INC.**                                **DEFENDANT**

## ORDER

Pending is the motion for summary judgment of Plaintiff Hanover Insurance Company ("Hanover"). The motion was converted by the Court from a motion for judgment on the pleadings. The parties were given notice of the conversion and filed supplemental pleadings. For the reasons stated below, the motion is granted.

I.      Undisputed Facts

Defendant Dunbar Mechanical Contractors ("Dunbar") bid on a U.S. Government Department of the Army Corp of Engineers contract to complete construction on Ditch 27 & Tributaries in Mississippi County, Arkansas (the "Ditch 27 Project"). The Ditch 27 Project is a Service Disabled Veteran Set-Aside project which has certain requirements. In order to be awarded the contract, the bidder must be a Service Disabled Veteran-Owned Business ("SDVOB") and must agree that "it will not pay more than 85% of the amount paid by the government to it to firms that are not similarly situated." 13 C.F.R. § 125.6(a)(3). In other words, an SDVOB must perform at least 15% of the work on the Ditch 27 Project itself.

Dunbar, an SDVOB, was awarded the Ditch 27 Project W912EQ-14-B-003 at the price of $2,047,455.74. On the same day the Ditch 27 Project was awarded, Dunbar entered into a subcontract agreement (the "Subcontract") with Harding Enterprises, LLC ("Harding") to

"[p]rovide all work that was provided in the proposal Contract Documents: The contract documents shall consist of the Plans & Specifications; Safety Attachment; the invitation to Bid, dated 10/07/13, and this Agreement." (ECF No. 1-3). The project is named W912EQ-14-B-003 Ditch 27 & Tributaries Mississippi County, Arkansas. The Subcontract expressly states that Dunbar would pay Harding $1,794,136.00 as full compensation for all the work done. (ECF No. 1-3). This represents 87.6% of the Ditch 27 Project.

Approximately one month later, Billy W. Dunbar of Dunbar Mechanical Contractors entered into a separate Employment Agreement with Gregg Harding, the sole member of Harding Enterprises, LLC. Gregg Harding was employed as the project manager for the Ditch 27 Project for $62,000 in compensation. (ECF No. 1-4). Billy W. Dunbar and Joan Dunbar are the only members of Dunbar Mechanical Contractors. Neither Harding Enterprises, LLC nor Gregg Harding are SDVOBs.

At the request of Harding, Hanover issued a Subcontract Performance Bond and a Subcontract Payment Bond in the penal sum amount of the Subcontract, $1,794, 136.00 on behalf of Harding Enterprises, LLC as the Principal to Dunbar Mechanical Contractors as the Obligee (the "Bond"). The purpose of the Bond was to guarantee Harding Enterprise's performance of the Subcontract between Dunbar and Harding. In the event of Harding's default of the Subcontract, Hanover would be obligated under the Bond to a) complete the Subcontract, (b) obtain new contractors to complete the Subcontract, (c) pay Dunbar, or (d) deny liability. (ECF No. 1-5 at p. 2).

On April 20, 2017, Dunbar advised Hanover that Dunbar intended to terminate the Subcontract with Harding and the employment contract with Gregg Harding based on Harding's alleged default. Dunbar demanded performance by Hanover under the Bond. During its

investigation of the claim, Hanover discovered that Dunbar was allegedly in violation of its Ditch 27 Project contract with the Government because Dunbar had subcontracted with a non-SDVOB for more than 85% of the Ditch 27 Project price. Hanover denied Dunbar's claim pursuant to Paragraph 4.4 of the Bond. Hanover filed this suit for declaratory judgment seeking a declaration that Hanover has no obligations under the Bond to complete the Ditch 27 Project and no obligations under the Bond to Dunbar for payment of money or performance of the Subcontract. Hanover also seeks to rescind the Bond.

II.     Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*,   [to] point out to the District Court,   that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not

> contain such an issue and to identify that part of the record which
> bears out his assertion.  Once this is done, his burden is discharged,
> and, if the record in fact bears out the claim that no genuine dispute
> exists on any material fact, it is then the respondent  s burden to set
> forth affirmative evidence, specific facts, showing that there is a
> genuine dispute on that issue.  If the respondent fails to carry that
> burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) (brackets in original)).  Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

III.    Analysis

After review of the record, the Court finds that there is no dispute as to any material fact in this case. The Subcontract between Dunbar and Harding violates federal law. Dunbar was awarded the Ditch 27 Project, in part, because it is an SDVOB. As an SDVOB, Dunbar is obligated to spend at least 15% of the cost of the contract performance on its employees or employees of other service disabled veteran owned small businesses. *See* Federal Acquisition Regulation 52.219-27.[1] The Prime Contract states, "The Contractor shall perform on the site, and with its own organization, work equivalent to at least 15 percent of the total amount of work to be performed under the contract." (ECF No. 27-1 at p. 117) (emphasis in original); Federal Acquisition Regulation 52.236-1. Dunbar subcontracted "all work that was provided in the proposal Contract Documents" to Harding, a non-SDVOB. (ECF No. 1-3).

---

[1] The FAR is "issued under statutory authority and published in conformance with required statutory and regulatory procedures. FAR § 1.301(b). Accordingly, those regulations have the force and effect of law." *Davies Precision Machining, Inc. v. United States*, 35 Fed. Cl. 651, 657–58 (1996) (citing *Newport News Shipbuilding & Dry Dock Co. v. Garrett*, 6 F.3d 1547, 1552 (Fed. Cir. 1993) (FAR § 33.207(c)(2) was binding on courts, not merely an interpretive regulation.))

The Government agreed to pay Dunbar $2,047,455.74 for the Ditch 27 Project. In the Subcontract, Dunbar agreed to pay Harding $1,794,136.00 for its part of the Ditch 27 Project, or 87.6%. Dunbar's agreement with Gregg Harding to be the Ditch 27 Project Manager for an additional $62,000.00 represents 90.66% of the cost of the contract which would be paid to a non-SDVOB business or employee.

Dunbar argues that the Ditch 27 Project contract was not a fixed price contract, but rather certain items of work were based on fixed unit prices. However, the Prime Contract Solicitation for Ditch 27 states: "The Government contemplates award of a firm-fixed price construction contract resulting from this solicitation." (ECF 27-1 p. 16) (emphasis in original). There is a provision in the Prime Contract Solicitation that contemplates a variation in estimated quantity. ECF No. 27-1 at p. 57-58; FAR 52.211-18. The provision states:

> If the quantity of a unit-priced item in this contract is an estimated quantity and the actual quantity of the unit-priced item varies more than 15 percent above or below the estimated quantity, an equitable adjustment in the contract price shall be made upon demand of either party. The equitable adjustment shall be based upon any increase or decrease in costs due solely to the variation above 115 percent or below 85 percent of the estimated quantity.

*Id.* Though there is a mechanism for the Government to pay more to Dunbar on the Ditch 27 Project, Dunbar cannot argue that it didn't know how much money the Government would pay it for the Ditch 27 Project or what percentage of the Project would be paid to Harding. According to the Subcontract, Dunbar hired Harding to do all of the work on the Project. Any variation in quantity of a unit-priced item would likely be owed to Harding, the party doing the work.

"Any act which is forbidden, either by the common or the statutory law, whether it is malum in se, or merely malum prohibitum, indictable or only subject to a penalty or forfeiture, or however otherwise prohibited by a statute or the common law, cannot be the foundation of a valid contract; nor can anything auxiliary to or promotive of such act." *Eager v. Jonesboro, Lake*

*City & E. Exp. Co.*, 103 Ark. 288, 147 S.W. 60, 64 (1912). Because the Subcontract is illegal, Hanover is not obligated to fulfill its obligations under the Bond which ensured performance of the Subcontract. Illegality is a ground for rescinding a contract. Further, although there is little case law in this Circuit regarding the liability of a surety under the False Claims Act ("FCA") for furtherance of an illegal subcontract for work on a Government project. Based upon the reasoning of the court in *United States ex rel. Scollick v. Narula*, 2017 U.S. Dist. LEXIS 119530 (D.D.C. July 31, 2017), there may be potential FCA liability for Hanover if it were to perform under the Bond to complete Ditch 27 Project.

For all of these reasons, Hanover's motion for summary judgment (ECF No. 17) is GRANTED. Dunbar's counterclaims against Hanover are dismissed in light of this decision. The motion to amend the scheduling order (ECF No. 31) is MOOT. The Clerk is directed to close the case.

IT IS SO ORDERED this 3rd day of June, 2019.

_____
James M. Moody Jr.
United States District Judge